AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>JOSE JAVIER CINTRON,<br><br>Defendant | )<br>)<br>) Case No.  5:22-MJ- 270 (ATB)<br>)<br>)<br>)<br>)<br>) |

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Jul 06 - 2022
John M. Domurad, Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of July 5, 2022 in the county of Onondaga in the Northern District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) | Possession with Intent to Distribute a Controlled Substance, to wit: Fentanyl, a Schedule II Controlled Substance |

This criminal complaint is based on these facts:
See Affidavit

☒   Continued on the attached sheet.

_____
Complainant's signature
Brandon T. Geer, Task Force Officer
Printed name and title

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: 7/6/2022

_____
Judge's signature

City and State: Syracuse, New York

Hon. Andrew T. Baxter, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon T. Geer, being duly sworn, depose and state:

### I. INTRODUCTION

1. I am a Deportation Officer with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE). I have been so employed with ICE since November 2017. Previous to my employment with ICE, I was employed as a Border Patrol Agent with the United States Border Patrol from May 2014 until November 2017. I am currently assigned to the United States Department of Justice, Drug Enforcement Administration (DEA) Syracuse Resident Office as a Task Force Officer (TFO). I have been a sworn member of the DEA Syracuse Resident Office Task Force since October 2020. As such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 United States Code, Section 801, et sec. and Title 18, United States code, Section 2516.

2. I have participated in several multi-agency narcotics investigations. During the course of these investigations, I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and reviews of tape-recorded conversations and narcotics records. I have participated in numerous searches of residences, businesses and vehicles in which controlled substances, drug paraphernalia, currency, and records were discovered.

1

My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below. I have personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Special Agents of the DEA, other federal law enforcement agents, and other state and local law enforcement agencies, I am fully familiar with the facts and circumstances of this investigation.

3. This affidavit is made in support of a criminal complaint charging Jose Javier Cintron ("**CINTRON**") with possession with the intent to distribute a controlled substance, to wit, Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A). The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, and on my training and experience. As this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that **CINTRON** possessed with intent to distribute Fentanyl.

## II.   FACTS IN SUPPORT OF PROBABLE CAUSE

4. Since June 2022, members of the Drug Enforcement Administration (DEA), and other local law enforcement agencies have been investigating **CINTRON** and his involvement with Fentanyl trafficking in the Northern District of New York.

2

5. In June of 2022, Agents met with a Confidential Source[1], hereinafter referred to as the "CS", who supplied law enforcement with following information. For approximately one year, the CS has been purchasing large quantities of 'bricks' containing Fentanyl from a Hispanic male, who the CS knew as 'Audi', in Syracuse, New York. The CS has previously purchased multi-hundred 'brick'[2] quantities of Fentanyl from 'Audi.' The CS always, with the exception of one time, met with 'Audi' in a specific parking area at the Destiny Mall in Syracuse, New York during their illicit drug transactions. The CS believed they could purchase multi-hundred 'brick' quantities of Fentanyl from 'Audi' at the direction of law enforcement.

6. Utilizing information obtained from CS regarding 'Audi', law enforcement was able to identify 'Audi' as **CINTRON**. When law enforcement presented CS with a photograph of **CINTRON**, CS identified the photograph of **CINTRON** to be the Hispanic male they know as 'Audi.' Based on review of law enforcement records/databases, law enforcement learned, in substance and in part, the following:

   a. A review of New York State Department of Motor Vehicle records showed that **CINTRON's** New York State Driver's License listed a residential address on Delong Ave, Apt 2, Syracuse, New York 13208.

---

[1] The CS was previously the target of a search warrant by local law enforcement, in which they were found to be in possession of a large quantity of Fentanyl. The CS subsequently agreed to cooperate with law enforcement in the hopes that their cooperation would be taken into consideration.

[2] A 'brick' is a form of packaging, commonly used with Fentanyl, in which approximately 50 bags of Fentanyl are secreted within paper packaging.

b. A review of **CINTRON**'s passport records list a mailing address of on Delong Ave, Apt 2, Syracuse, New York 13208.

c. A criminal history inquiry indicated that **CINTRON** pled guilty to Criminal Possession of a Controlled Substance-3rd on December 12, 2019, in Onondaga County Court and was sentenced to a 1 year term of incarceration.

7. On July 5, 2022, law enforcement met with the CS, for the purpose of conducting a buy-bust operation targeting **CINTRON**. The CS communicated with **CINTRON**, in the presence of law enforcement, via text message, requesting to meet for purpose of CS purchasing 272 'bricks' of Fentanyl from **CINTRON**. **CINTRON** agreed, further providing 'stamp'3 options for the 'bricks' to be purchased. **CINTRON** offered CS the following 'stamp' options, via text message:

- NASCAR
- RP10
- 4th July
- Volvo

8. Around this time when the CS was initiating communication with **CINTRON**, law enforcement initiated surveillance of **CINTRON**'s Delong Ave residence. During surveillance of the residence, law enforcement observed **CINTRON** exit and enter the Delong Ave residence multiple times. Law enforcement observed **CINTRON** utilize the front door of the residence to enter/exit the residence, for which the door was marked "1", believed to be the entrance for

---

3 Fentanyl traffickers commonly utilize 'stamps' containing specific colors/images/text to

apartment 1. Just prior to **CINTRON** leaving the residence, law enforcement observed **CINTRON** walk down the South side of the residence, towards the entrance for apartment 2, though the actual door/entrance was obstructed from law enforcement's view, and emerge soon thereafter alone, and then proceed to get into a Gray Toyota Sienna minivan parked at the residence. **CINTRON** then drove away from the residence in the Gray Toyota Sienna, and law enforcement initiated mobile surveillance on **CINTRON**.

9. Law enforcement observed **CINTRON** travel directly from the residence to the Destiny Mall in Syracuse, New York. While **CINTRON** was driving, the CS communicated with **CINTRON**, via telephone, and in the presence of law enforcement, telling **CINTRON** that they would soon arrive at the Destiny Mall. **CINTRON** acknowledged, and said that he was about to arrive at the Destiny Mall. Law enforcement observed **CINTRON** park the Gray Toyota Sienna in the specific parking area previously described by the CS as the area where they usually met with **CINTRON**. A Syracuse Police Department (SPD) Special Weapons and Tactics (SWAT) team initiated a vehicle takedown on **CINTRON**, in which they surrounded **CINTRON**'s vehicle with multiple law enforcement vehicles, and began issuing verbal commands to **CINTRON**. In an apparent attempt to escape law enforcement, **CINTRON** reversed the Gray Toyota Sienna directly into the driver's side of a SPD law enforcement vehicle, causing serious damage to the SPD law enforcement vehicle and the Gray Toyota Sienna. SPD SWAT officer subsequently removed **CINTRON** from the Gray Toyota Sienna, and placed him in a law enforcement vehicle. Shortly thereafter, **CINTRON** was verbally Mirandized by a DEA TFO.

---

differentiate between different 'batches' of Fentanyl.

10. While taking **CINTRON** into custody, law enforcement observed a large blue shopping bag, open on the passenger seat of the Gray Toyota Sienna. Law enforcement was able to see, within plain view, what they recognized to be a large quantity of 'bricks' contained within the shopping bag. Law enforcement seized the shopping bag containing the 'bricks' and two cell phones from Gray Toyota Sienna. Law enforcement transported **CINTRON**, and the seized evidence to the DEA Syracuse Resident Office (SRO) for further investigation.

11. At the DEA SRO, law enforcement processed the blue shopping bag containing 'bricks.' Law enforcement found the bag to contain 272 'bricks', a sample of which field tested positive for the presence of Fentanyl. Law enforcement found the 'bricks' to have the following 'stamps'.

- NASCAR
- RP10
- 4th July
- Volvo

12. At the DEA SRO, your affiant, along with multiple other law enforcement members conducted a video-recorded interview of **CINTRON**. Your affiant Mirandized **CINTRON**, verbally and in writing (utilizing a DEA Advice of Rights Forms). **CINTRON** agreed to waive Miranda, verbally and in writing, agreeing to speak with law enforcement without the presence of an attorney. Subsequent to his waiver of Miranda, **CINTRON** provided written and oral consent for law enforcement to search his Apartment 1 residence on Delong Ave. and the two cellular telephones found in his vehicle. **CINTRON** stated that he was the sole occupant of Apartment 1, and reported

6

that he possessed a handgun and US Currency, which would be located within the residence. **CINTRON** reported that Apartment 2, in the rear of the Delong Ave residence was occupied by a specifically identified relative of **CINTRON**.

13. While your affiant continued the interview of **CINTRON**, other members of law enforcement executed the consent search on Apartment 1, entering the residence utilizing a key located with **CINTRON's** vehicle keys from the Gray Toyota Sienna. Upon entry, law enforcement found the residence to be unoccupied. Within Apartment 1, law enforcement located and seized a loaded handgun with an obliterated serial number and approximately $2,500 in US Currency.

14. Subsequent to the consent search of Apartment 1, law enforcement made contact with the occupant and previously identified relative of **CINTRON's** who was present at Apartment 2. That individual consented both verbally, and in writing, to a consensual search of Apartment 2. Within Apartment 2, law enforcement located and seized a large quantity of suspect Fentanyl 'bricks.' The bulk (approximately 1,182) of the seized 'bricks' were located inside of a blue luggage bag. Law enforcement located smaller quantities (totaling approximately 71) of 'bricks', in other locations within Apartment 2. Law enforcement transported all seized evidence to the DEA SRO for further processing. Law enforcement field tested a sample of the 'bricks' from the blue luggage bag, which field tested positive for the presence of Fentanyl. The 'bricks' from the blue luggage bag were found to contain the following 'stamps':

- NASCAR
- RP10

- 4th July
- Volvo

15. During the continued video-recorded interview of **CINTRON**, **CINTRON** admitted to possession of all the bricks seized from the Gray Toyota Sienna, specifically stating that he believed there to be approximately 270 'bricks' in the vehicle, and describing the bag in which they were located along with descriptions of several of the 'stamps' found on the 'bricks.' **CINTRON** further admitted to possession of the all the seized 'bricks' from the Apartment 2, and was able to specifically describe the blue luggage bag in which they were located, as well as the locations within Apartment 2, where other 'bricks' were located. **CINTRON** stated that he stored the blue luggage bag containing the 'bricks' within his relative's residence, and would take 'bricks' out of the bag to sell to customers.

16. The approximate total number of 'bricks' seized were as follows:

- Gray Toyota Sienna – 272 'bricks'
- Delong Ave (Apartment 2)
  - Blue luggage Bag – 1,182 'bricks'
  - Other locations (within Apartment 2) – 71 'bricks'

17. From his training and experience, you affiant knows a 'brick' to containing approximately one gram of suspect Fentanyl. Therefore, your affiant believes that **CINTRON** possessed with intent to distribute approximately 1,500 Grams of Fentanyl.

8

### III. CONCLUSION

18. I believe the foregoing establishes probable cause to believe that Jose Javier Cintron possessed with intent to distribute a controlled substance, to wit, Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). I respectfully request that the Court authorize the filing of this complaint so that the defendant may be charged and brought to court for further proceedings in accordance with the law.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

_____
Brandon T. Geer, Task Force Officer
Drug Enforcement Administration

I, the Honorable Andrew T. Baxter, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on July 6, 2022, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Andrew T. Baxter
United States Magistrate Judge